Case No. 24-1793

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, ex rel. DEBORAH SHELDON, Executrix of the Estate of Troy Sheldon, *Plaintiff-Appellant*,

v.

ALLERGAN SALES, LLC, *Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

## BRIEF OF PLAINTIFF-APPELLANT, DEBORAH SHELDON, EXECUTRIX OF THE ESTATE OF TROY SHELDON

---

Joseph M. Callow, Jr.
Gregory M. Utter
CALLOW + UTTER LAW GROUP
8044 Montgomery Road, Suite 170
Cincinnati, Ohio 45236
Phone: (513) 378-0141
jcallow@callowandutter.com
gmutter@callowandutter.com

Joel D. Hesch
THE HESCH FIRM, LLC
3540 Ridgecroft Drive
Lynchburg, Virginia 24503
Phone: (434) 229-8677
joel@howtoreportfraud.com

Attorneys for Deborah Sheldon, Executrix of
the Estate of Troy Sheldon

December 3, 2024

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1793__    Caption: __United States ex rel. Deborah Sheldon v. Allergan Sales, LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Deborah Sheldon, Executrix of the Estate of Troy Sheldon__
(name of party/amicus)

_____

who is _____Plaintiff-Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?                          ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:



3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐YES ☑NO
     If yes, identify all such owners:

te000001

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Joseph M. Callow, Jr.          Date:    September 3, 2024

Counsel for: Plaintiff-Appellant

- 2 -

[ Print to PDF for Filing ]

te000002

## <u>TABLE OF CONTENTS</u>

Page(s)

DISCLOSURE STATEMENT

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .......................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ................................. 1

JURISDICTIONAL STATEMENT ................................................. 3

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................... 4

STATEMENT OF THE CASE ....................................................... 5

STATEMENT OF FACTS ........................................................... 9

     A.    The Allegations in the First Amended Complaint ..................... 9

     B.    The Rebate Statute and Rebate Agreement Mandate
          that Manufacturers Aggregate Price Concessions ................... 12

     C.    The District Court Doubled-Down on its Prior,
          Vacated Decision and Conducted a Flawed Analysis.............. 20

STANDARD OF REVIEW ......................................................... 24

SUMMARY OF THE ARGUMENT ............................................... 25

ARGUMENT ......................................................................... 26

     A.    The District Court Erred in Failing to Conduct an Appropriate
          Statutory Construction Analysis, and in Failing to Conclude
          that the Rebate Statute and Rebate Agreement Require
          Aggregation of Rebates and Discounts to Multiple Entities
          for the Same Drug Unit ........................................... 27

i

Page(s)

1.  The Rebate Statute and Rebate Agreement Require
    Aggregation of Rebates and Discounts for a Single
    Drug Unit ...................................................................... 28

2.  The Specific Context in Which the Language is Used,
    and the Broader Context of the Rebate Statute
    and Rebate Agreement, Support the Conclusion that
    the Rebate Statute and Rebate Agreement Require
    Aggregation of Rebates and Discounts for a Single
    Drug Unit ...................................................................... 34

    a.  Average Manufacturer Price ("AMP") Must be
        Larger than Best Price.............................................. 34

    b.  AMP and Best Price Use Similar Language............. 36

3.  CMS' 30+ Years of Rulemaking and Guidance
    are Relevant and Support Stacking of Rebates
    and Discounts................................................................ 39

4.  The District Court Erred In Not Conducting An
    Appropriate Statutory Construction of the Rebate
    Statute and Rebate Agreement, requiring Reversal ....... 43

B.  The District Court Erred in Deciding Scienter at the
    Motion to Dismiss Stage, Conflating Falsity and
    Scienter and Failing to Construe the Scienter
    Allegations in the Amended Complaint in a Light
    Most Favorable to Sheldon ...................................................... 46

    1.  Sheldon's Amended Complaint Adequately Pleads
        Actual Knowledge........................................................ 47

    2.  Sheldon's Amended Complaint Adequately Pleads
        Deliberate Ignorance ................................................... 51

    3.  Sheldon's Amended Complaint Adequately Pleads
        Reckless Disregard....................................................... 54

Page(s)

CONCLUSION ................................................................ 58

CERTIFICATE OF COMPLIANCE ........................................ 59

CERTIFICATE OF SERVICE ............................................... 60

# TABLE OF AUTHORITIES

Page(s)

Cases:

*Alexander S. v. Boyd*,
113 F.3d 1373 (4th Cir. 1997) ....................................................... 32

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008) ...................................................................... 31

*Alvarez-Pineda v. Barr*,
No. 19-1484,
2020 U.S. App. LEXIS 37492 (4th Cir. Dec. 1, 2020) ................................. 39

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 26, 50

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011) .............................................................. 13, 29, 37

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) ...................................................................... 39

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) ...................................................................... 42

*Crespo v. Holder*,
631 F.3d 130 (4th Cir. 2011) ........................................................ 28

*E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*,
637 F.3d 435 (4th Cir. 2011) .......................................................... 9

*Farmer v. Brennan*,
511 U.S. 825 (1994) ...................................................................... 54

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) ...................................................... 51

iv

Page(s)

*Hardy Wilson Mem. Hosp. v. Sebelius*,
616 F.3d 449 (5th Cir. 2010) ...................................................... 40

*In re Total Realty Mgmt., LLC*,
706 F.3d 245 (4th Cir. 2013) ...................................................... 29

*Lee v. Norfolk S. Ry. Co.*,
802 F.3d 626 (4th Cir. 2015) ...................................................... 28

*Loper Bright Enterp. v. Raimondo*,
144 S. Ct. 2244 (2024) ................................................... 39, 41, 42

*Mapoy v. Carroll*,
185 F.3d 224 (4th Cir. 1999) ...................................................... 32

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .................................................................... 44

*Pharmaceutical Research & Mfrs. of Am. v. Thompson*,
362 F.3d 817 (D.C. Cir. 2004) ................................................... 40

*Ross v. R.A. North Dev., Inc.*,
706 F.3d 245 (4th Cir. 2013) ...................................................... 24

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ............................................................... 31

*Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145 (2013) .................................................................... 41

*United States ex rel. Badr, v. Triple Canopy, Inc.*,
775 F.3d 628 (4th Cir. 2015) ...................................................... 24

*United States ex rel. Care Alts.*,
952 F.3d 89 (3d Cir. 2020)......................................................... 44

*United States ex rel. Drakeford v. Twomey*,
792 F.3d 364 (4th Cir. 2015) ................................................ 44, 45

Page(s)

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
530 F.3d 980 (D.C. Cir. 2008) ..................................................... 55

*United States ex rel. Oliver v. Parsons Co.*,
195 F.3d 457 (9th Cir. 1999) ...................................................... 44

*United States ex rel. Purcell v. MWI Corp.*,
807 F.3d 281 (D.C. Cir. 2015) ................................................. 55, 56

*United States ex rel. Rostholder v. Omnicare, Inc.*,
745 F.3d 694 (4th Cir. 2014) .................................................. 26, 27

*United States ex rel. Schutte v. Supervalu, Inc.*,
598 U.S. 739 (2023) .............................................. 1, 2, 4, 6, 7, 11, 21, 22, 25,
45,46, 47, 51, 53, 54, 55, 56, 57

*United States ex rel. Sheldon v. Allergan Sales, LLC*,
24 F.4th 340 (4th Cir. 2022) .................................................... 1, 35

*United States ex rel. Sheldon v. Allergan Sales, LLC.*,
143 S. Ct. 2686 (June 20, 2023) ...................................................... 1

*United States ex rel. Sheldon v. Allergan Sales, LLC*,
49 F.4th 873 (*en banc*) (4th Cir. 2022) ........................................... 1

*United States ex rel. Sheldon v. Allergan Sales, LLC.*,
2024 U.S. Dist. LEXIS 129331 (July 23, 2024, D. Md.) ....................... 2, 3

*United States ex rel. Streck v. Bristol-Myers Squibb Co.*,
370 F. Supp. 3d 491 (E.D. Pa. 2019) ........................................... 56

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) ...................................................... 45

*United States v. Bourseau*,
531 F.3d 1159 (9th Cir. 2008) ............................................... 26, 44

*United States v. Celgene Corp.*,
226 F. Supp. 3d 1032 (C.D. Cal. 2016) ......................................... 55

<u>Page(s)</u>

*United States v. Gonzales*,
520 U.S. 1 (1997) ................................................................ 31

*United States v. Mallory*,
Nos. 18-1811, 18-1812, 18-1813,
2021 U.S. App. LEXIS 5073 at *9 (4th Cir. Feb. 22, 2021) ........................ 44

*United States v. Maxwell*,
285 F.3d 336 (4th Cir. 2002) ........................................................ 31

*United States v. Newman*,
No. 16-1169 (CKK),
2017 U.S. Dist. LEXIS 131056, at *25 (D.D.C. Aug. 17, 2017) ................ 56

*United States v. Powell*,
680 F.3d 350 (4th Cir. 2012) ........................................................ 28

*United States v. Vandewater Int'l*,
No. 2:17-cv-04393-RGK-KS,
2020 U.S. Dist. LEXIS 138240, at *27 (C.D. Cal. June 23, 2020) .............. 56

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) ................................................................ 26, 44, 46, 54

<u>Statutes</u>:

42 C.F.R. § 447.505 (2007) ........................................................ 16, 17, 18, 19

28 U.S.C. § 1291 ................................................................ 3

42 U.S.C. § 1395hh(a)(1) ........................................................ 40

42 U.S.C. § 1396a ................................................................ 40

42 U.S.C. § 1396r-8 ................................................................ 5, 10, 13, 14, 30, 34, 36, 37, 40

Page(s)

Federal Regulations:

56 Fed. Reg. 7049 (Feb. 21, 1991) .......................................... 5, 13, 32, 36, 37

71 Fed. Reg. 77174 (Dec. 22, 2006) .................................................. 15, 16, 41

72 Fed. Reg. 39142 (July 17, 2007)..................................................... 16, 41

81 Fed. Reg. 5170 (Feb. 1, 2016) ........................................................ 18, 41

Other Regulations:

136 Cong. Rec. S 12954 (1990)..................................................................... 13

H.R. Rep. No. 101-881 (1990).............................................................. 13, 35

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Relator Sheldon ("Sheldon") requests oral argument in this case.

This matter is before the Court for the second time. In *Sheldon I*, this Court, after oral argument, affirmed the District Court's prior opinion granting Defendant's motion to dismiss in a 2-1 Panel opinion. *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340 (4th Cir. 2022). This Court subsequently granted Sheldon's petition for rehearing *en banc*, vacating the above-referenced Panel opinion. After an *en banc* oral argument, the Court did not come to consensus on any issue, with an equal number of votes to reverse and affirm the District Court's opinion. As a result, the District Court's judgment was affirmed by a divided court, and the above-referenced Panel opinion remained vacated. *United States ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (*en banc*) (4th Cir. 2022).

On June 30, 2023, the Supreme Court granted Sheldon's petition for writ of certiorari, vacated the District Court's judgment and opinion, and remanded the case back to this Court for further consideration in light of its decision in *United States ex rel. Schutte v. Supervalu, Inc.*, 598 U.S. 739 (2023). *United States ex rel. Sheldon v. Allergan Sales, LLC.*, 143 S. Ct. 2686 (June 20, 2023). On August 2, 2023, this Court remanded the case to the District Court for further proceedings, with instructions to also reconsider the judgment and opinion in light of *Schutte*. JA0345-JA0346, JA0347-JA0351 (Judgment), JA0352-JA0353 (Mandate).

1

Upon remand, the District Court ordered additional briefing, refused to allow any fact discovery, and granted Defendant's renewed motion to dismiss without a hearing. *United States ex rel. Sheldon v. Allergan Sales, LLC.*, 2024 U.S. Dist. LEXIS 129331 (July 23, 2024, D. Md.). This appeal follows the District Court's Opinion to grant another motion to dismiss to Defendant, despite the instructions from the Supreme Court and this Court.

Oral argument will assist the Court in understanding the legal and factual issues on this appeal, *Sheldon II*. This case involves an issue of first impression requiring the Court to determine the meaning of the Medicaid Rebate Statute, an analysis that the District Court failed to complete in its Opinion. The Court will also have the opportunity to consider the application of the Supreme Court's *Schutte* opinion to this case, which the District Court also failed to correctly analyze in its Opinion. This Court's decision will have significant impact on False Claims Act ("FCA") cases both inside and outside this Circuit. With the far-reaching scope in mind, oral argument will aid this Court significantly in reaching its decision on appeal.

## <u>JURISDICTIONAL STATEMENT</u>

On July 23, 2024, the District Court granted Defendant's motion to dismiss and entered judgment on July 23, 2024. *United States ex rel. Sheldon v. Allergan Sales, LLC.*, 2024 U.S. Dist. LEXIS 129331 (July 23, 2024, D. Md.); JA0845-JA0907 and JA0909-JA0910. On August 15, 2024, Sheldon timely filed her notice of appeal. JA0908.

This Court has jurisdiction under 28 U.S.C. § 1291.

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.      Did the District Court err in not engaging in a proper statutory construction analysis of the Medicaid Rebate Statute and Rebate Agreement, and not determining whether the allegations in Sheldon's Amended Complaint, accepted as true and with all reasonable inferences drawn from the allegations in a light most favorable to Sheldon in the context of a Motion to Dismiss, asserted a plausible claim under the FCA for a violation of the Medicaid Rebate Statute and Rebate Agreement?

2.      Did the District Court err in deciding the issue of scienter when the scienter allegations in Sheldon's Amended Complaint, accepted as true and with all reasonable inferences drawn from the allegations in a light most favorable to Sheldon in the context of a Motion to Dismiss, established questions of fact on all three scienter standards outlined in *Schutte*?

## STATEMENT OF THE CASE

The District Court committed two key errors. First, it completely failed to engage in proper statutory analysis of the meaning of "prices actually realized" and thus whether aggregation was required by the Rebate Statute and Rebate Agreement. The District Court sidestepped the analysis by focusing on scienter first and ruling that a company cannot possess scienter when a statute is ambiguous, which is simply wrong. Second, the District Court decided the issue of scienter as a matter of law at the motion to dismiss stage, when Sheldon adequately pled scienter in her Amended Complaint and scienter is an issue of fact reserved for the jury.

The Medicaid Rebate Statute, 42 U.S.C. § 1396r-8(c)(1)(C) ("Rebate Statute") and Rebate Agreement, 56 Fed. Reg. 7049 ("Rebate Agreement") require manufacturers to report to the Government its lowest price for a particular drug ("Best Price"), inclusive of all rebates, discounts, and other price concessions that Defendant gives to any entity or entities for a particular drug if they affect the *price actually realized* by the manufacturer. The program only applies to manufacturers and Best Price prevents a manufacturer from receiving more from sales to Medicaid recipients for a particular drug than it receives on private sales. Manufacturers must pay the States a rebate based on a statutory formula of Average Manufacturer Price ("AMP") minus Best Price. The issue of falsity centers around whether "prices actually realized," language used in both AMP and Best Price, includes all rebates

paid by the manufacturer or is limited to just the highest rebate paid to one entity. Here, Defendant paid two sets of rebates to two entities to make the sale of a single pill to its wholesaler and argues that aggregation is required for AMP but not Best Price. The District Court, for a second time, chose not to make a ruling on the meaning of "prices actually realized" for Best Price, or AMP, but dismissed the case because the statute and regulation were ambiguous.

On remand, with instructions from the Supreme Court and this Court to reconsider its prior opinion in light of the Supreme Court's opinion in *Schutte*, the District Court unfortunately doubled-down. The District Court acknowledged that this Court's *en banc* ruling vacated the District Court's prior opinion, and acknowledged that the Supreme Court in *Schutte* rejected the scienter standard that the vacated Panel decision had applied – but the District Court was not deterred:

> In my view, however, these developments do not change the outcome previously arrived at by this Court. The Relator's allegations of scienter remain insufficient, even when evaluated under the "subjective" standard set forth in *Schutte,* 598 U.S. 739. Alternatively, the Relator has not sufficiently alleged that Forest's price reports were "false" within the meaning of the FCA.

JA0879.

The District Court got it wrong, again, by continuing to conduct a backwards analysis. The District Court once again conflated falsity and scienter and essentially re-applied the "objectively unreasonable" standard that was specifically rejected by

6

the Supreme Court in *Schutte*. The District Court used different wording, but applied the identical approach with the same wrong result in its Opinion.

The District Court concluded that the Rebate Statute, Rebate Agreement and related regulations were ambiguous and "neither clearly require aggregation nor clearly disclaim the need for aggregation." JA0903. The District Court did not determine the intent of the Rebate Statute or Rebate Agreement, but instead determined that Defendant had plausibly argued one interpretation of the Rebate Statute and Rebate Agreement that would not require aggregation, so ambiguity favored Defendant in negating scienter. JA0903. The District Court used the same "objectively unreasonable" arguments from its prior opinion to reach the same result as before – citing and relying heavily on the vacated Panel majority opinion to support and justify its Opinion. Instead, the District Court should have engaged in statutory construction to determine whether "prices actually realized," requires aggregation for both AMP and Best Price.

The District Court also failed to accept Sheldon's allegations as true, and draw all reasonable inferences in Sheldon's favor. Here, Sheldon alleges a plethora of facts alleging actual knowledge. Specifically, Defendant held internal meetings where it made a decision to stop paying rebates to two separate entities because that would set a best price and hired a company (DNA) to catch and stop making two sets of rebates. JA0035-JA0037, JA0069-JA0071. However, in order to break into

7

a new market, Defendant chose not to use the audit program and decided to pay two sets of rebates to certain preferred customers.  Defendant included both rebates for AMP, but only one for Best Price.

Sheldon also alleges a plethora of facts supporting deliberate ignorance and reckless disregard.  For instance, Defendant was so concerned that the 2006 proposed regulations required aggregation of rebates that it hired outside counsel to submit a comment during rulemaking asking CMS to change its rules regarding the term Best Price to eliminate aggregation.  JA0060-JA0061.  In Defendant's letter to CMS, Defendant specifically acknowledged that the "preamble to the proposed rule suggests that CMS views best price as the amount realized by the manufacturer on a sale rather than the lowest price to a particular customer."  JA0421-JA0429.  However, when CMS did not change the language in the regulation, Defendant chose to remain silent and secretly kept including both rebates for AMP but only one for Best Price.  Clearly Sheldon has alleged facts, accepted as true, that plausibly suggest that Defendant acted with scienter.  The District Court should have denied the motion to dismiss and allowed the case to proceed to discovery.

## STATEMENT OF FACTS

### A.     The Allegations in the First Amended Complaint[1]

As this Court is well aware, at the motion to dismiss stage, courts must accept Sheldon's factual allegations as true and must draw all reasonable inferences in favor of Sheldon.  *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  It is important to examine the allegations in the Amended Complaint.  The District Court did not accept the factual allegations as true and did not draw all reasonable inferences from the allegations in favor of Sheldon.

Sheldon's Amended Complaint  (JA0028-JA0212) consists of more than 879 paragraphs and 179 pages.   In her Amended Complaint, Sheldon alleges that Defendant, with knowledge of its Best Price obligations, failed to comply with their obligations and defrauded the Government of more than $680 million.  JA0033-JA0042, JA0071-JA0109.

For example, Sheldon alleges that Defendant knew it was required to provide Medicaid a rebate that was the greater of the statutory minimum of 23.1% or the

---

[1] Sheldon's Complaint was originally filed against Forest Pharmaceuticals, Inc. and Forest Laboratories, LLC.  On March 30, 2020,  Allergan Sales, LLC was substituted as the Defendant.  For the purpose of this Brief, Sheldon refers to Forest and Allergan collectively as "Defendant"; some citations to the Amended Complaint or historical documents will reference "Forest."

Mr. Sheldon died on November 10, 2017.  His wife, Deborah Sheldon, as Executor of the Estate of Troy Sheldon, was substituted as Plaintiff on March 19, 2018.

Best Price actually realized by Defendant when aggregating rebates and discounts provided for a particular pill.  42 U.S.C. 1396r-8(c)(1)(B)(i)(VI).  JA0052, *see also* JA0046-JA0048.  Sheldon alleges Defendant wanted to expand its business with long-term care facilities in particular, and that the pharmacies at the long-term care facilities, such as Pharmerica, refused to stock Defendant's drugs at its pharmacies unless the pharmacies received a discount.  Sheldon alleges Defendant provided two rebates for a particular pill dispensed to a patient at a long-term care facility: (a) 20% rebate to Humana or the commercial insurer of the patient; and (b) 20% rebate to the pharmacy like Pharmerica at the long-term care facility.  Sheldon alleges that the actual price realized included discounts of 40% – but Defendant reported its Best Price for the particular pill as either 23.1% (the standard discount by statute) or something less than 40%.  Sheldon alleges that Defendant made multiple false claims to the Government when falsely reporting Best Price for multiple drugs on a quarterly basis over multiple years, and thus defrauded the Government when repeatedly reporting the wrong Best Price.   JA0033-JA0034,  JA0036-JA0037, JA0065-JA0067, JA0069.

Sheldon specifically alleges falsity. Sheldon alleges that the Rebate Statute and Rebate Agreement required aggregation of any and all rebates and discounts that lowered the price actually realized by the manufacturer.  Indeed, the Rebate Agreement, which Defendant signed and agreed to use to calculate Best Price,

10

demanded that "best price for a quarter shall be adjusted by the Manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized." JA0356-JA0357.  Sheldon provides specific details regarding the Medicaid Program; Drug Reimbursement Under Medicaid; Medicaid Reimbursement Formulas; The Medical Drug Rebate Program; the Medicaid Drug Rebate Statute; the Medicaid Rebate Agreement; the 1991 and 1994 Program Releases; the 2005 GAO Report; the 2007 CMS rulemaking period and resulting regulations; Defendant's 2007 Letter to CMS; and the 2016 CMS rulemaking period and resulting regulations.  JA0052-JA0063.  Sheldon provides specific calculations for specific drugs, for specific quarters for specific years, as specific examples of Defendant's fraudulent conduct and the submission of fraudulent claims.  JA0032-JA0042, JA0071-JA0109.  In short, Defendant's claims were false because it under-reported its Best Price by failing to include all rebates that affected its "prices actually realized."

Sheldon also specifically alleges scienter.  As the Supreme Court confirmed in *Schutte*, the FCA identifies three separate, independent standards for scienter: (1) actual knowledge; (2) deliberate ignorance; and (3) reckless disregard.  In her Amended Complaint, Sheldon alleges all three standards.  JA0063, JA0107.  In her Amended Complaint, Sheldon did not just use the right terms – she provided factual

support and specific examples of scienter.[2]  For instance, Sheldon alleges *specific evidence* of actual knowledge, such as a decision not to use its normal audit to identify and eliminate rebates to multiple entities because it wanted to break into a new market and needed to pay double rebates.  Sheldon also alleges *specific evidence* of deliberate ignorance and reckless disregard, including Defendant hiring outside counsel to ask CMS to change proposed regulations because, according to Defendant's lawyers, "the preamble to the proposed rule suggests that CMS views best price as the net amount realized by the manufacturer on a sale rather than the lowest price to a particular customer."  In its own words, Defendant concedes that it viewed CMS requiring aggregation!

When all factual allegations are accepted as true, and all reasonable inferences are drawn in favor of Sheldon, Sheldon's Amended Complaint contains sufficient allegations under both Rule 12(b)(6) and Rule 9(b).

## B.    The Rebate Statute and Rebate Agreement Mandate that Manufacturers Aggregate Price Concessions

Sheldon's claims focus on the Rebate Statute and Rebate Agreement which clearly require the stacking of rebates because they affect the prices actually realized. The legislative history, and CMS' 30+ year history of interpretation and guidance,

---

[2] She also alleges the timeframe from FY2005 through the present, which continues through today.  JA0061, JA0107, JA0108 (emphasis added).  The District Court wrongly concluded that the allegations only include conduct through 2015.

further supports this statutory interpretation.

The Medicaid program is a cooperative federal-state program providing medical assistance to low-income individuals. 42 U.S.C. §§ 1396 *et seq*. In 1990, Congress discovered that Medicaid routinely paid more for prescription drugs than private entities – Congress passed the Rebate Statute to remedy that problem and ensure that manufacturers did not profit more from selling prescription drugs to Medicaid than they did from selling the same prescription drugs to private entities. *See* 136 Cong. Rec. S 12954 (1990); H.R. Rep. No. 101-881, 96 (1990). One mechanism by which Congress achieved its goal is the "Best Price" provisions in the Rebate Statute and Rebate Agreement. 42 U.S.C. § 1396r-8(c)(1)(C); 56 Fed. Reg. 7049 (Feb. 21, 1991); *see also Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011) (The Rebate Statute's obligations and the "contractual obligations, in short, are one and the same"). Congress designed and intended the Best Price provisions to ensure that the Government benefits from all rebates, discounts, and other price concessions manufacturers give to any other entity or entities. Best Price requires manufacturers to report the final lowest price "actually realized" by a manufacturer from a single drug unit. 56 Fed. Reg. 7049. This means the manufacturer must report the amount the manufacturer "actually realized" after aggregating any and all "cumulative discounts, rebates, or other arrangements" that "subsequently adjust the prices actually realized" by the manufacturer for a single

drug unit. *Id.*

The Rebate Statute sets forth the requirement that manufacturers must calculate Best Price by accounting for discounts provided to different entities. The 1991 version of the Rebate Statute, which is largely the same today, defined "Best Price" as "the lowest price available from the manufacturer to any wholesaler, retailer, nonprofit entity, or governmental entity… The best price shall be inclusive of cash discounts, free goods, volume discounts and rebates." 42 U.S.C. § 1396r-8(c)(1)(C) (1991); 42 U.S.C. § 1396r-8(c)(1)(C) (2020).

Congress commanded that CMS create a Rebate Agreement which manufacturers must agree to follow to be eligible to sell drugs to Medicaid recipients. Section § I(d) of the Rebate Agreement required Defendant to aggregate rebates if they adjust the prices actually realized, as follows:

> (d) "Best Price" means, with respect to Single Source and Innovator Multiple Source Drugs, the lowest price at which the manufacturer sells the Covered Outpatient Drug *to any purchaser in the United States in any pricing structure*…. in the same quarter for which the AMP is computed. Best price includes prices to wholesalers, retailers, nonprofit entities, or governmental entities within the States….
>
> *The best prices shall be inclusive of cash discounts, free goods, volume discounts, and rebates*….
>
> It shall be determined on a unit basis without regard to special packaging, labeling or identifiers on the dosage form or product or package…. *The best price for a quarter shall be adjusted by the Manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized*.

14

JA0356-JA0357 (emphasis added).    Defendant not only signed the Rebate Agreement, but promised to calculate Best Price based on the definitions and mandates contained in the Rebate Agreement.

For more than 30 years, CMS provided guidance and regulations confirming that "Best Price" under the Rebate Statute and Rebate Agreement means the price actually realized by a drug manufacturer for a single drug unit after aggregating any and all price concessions to all entities.  As outlined and explained in more detail in the Amended Complaint:

*The 1991 and 1994 Program Releases.* In a 1991 Program Release, CMS instructed manufacturers that "you must revise AMPs and/or BPs to reflect the impact of cumulative discounts or other arrangements on the *prices actually realized* in any quarter."  (Medicaid Drug Rebate Program Release No. 2 (Aug. 9, 1991) (emphasis added.).)  Again in 1994, CMS instructed manufacturers that "we consider any price adjustment which ultimately *affects the price actually realized by the manufacturer* as 'other arrangements' and, as required by the Rebate Agreement, included in the calculations of AMP and best price."  (Medicaid Drug Program Release No. 14 (Dec. 21, 1994) (emphasis added.).)  JA0052-JA0054.

*The 2006 Proposed Rules.* In late 2006, CMS issued proposed rules and sought public comments, which were due by February, 2007.  *See* 71 Fed. Reg. 77174 (Dec. 22, 2006).  In its preamble to the 2006 proposed rulemaking, CMS

15

provided notice and guidance to the industry pertaining to Best Price, stating that Best Price "includes cash discounts, free goods that are contingent on any purchase requirement, volume discounts and rebates [. . .] which reduce the price paid," and that the "best price for a rebate period should be *adjusted by the manufacturer if cumulative discounts or other arrangements subsequently adjust the prices actually realized.*" *Id.* at 77181.  CMS further stated that "*any price concession* associated with [a] sale *should be netted out* of the price *received by the manufacturer* in calculating best price and best price should be adjusted by the manufacturer if other arrangements subsequently adjust the *prices actually realized.*" *Id.* at 77182. JA0056.

*The 2007 Final Rules.*  On July 17, 2007, CMS issued its final rule with comments and responses.  Even though Defendant and other manufacturers asked CMS to change the language in the preamble, CMS made *no changes* to the preamble.  The preamble in the final rule *mirrors the language and explanation* in the proposed rule set forth above, *see* 72 Fed. Reg. 39142, 39149–50 (July 17, 2007), and the final rule, codified at 42 C.F.R. § 447.505 (2007), contains substantively *identical language* to Sections (a) and (e) of the proposed rule.  The sole change from the above-quoted 2006 proposed language to the 2007 language was the addition of the word "rebates" to the list of price concessions that shape the Best Price calculation.  *Compare* 71 Fed. Reg. 77174, 77197–98 (Dec. 22, 2006) *with* 42

16

C.F.R. § 447.505 (2007).

CMS also included extensive responses to comments upon the proposed regulations from manufacturers and others. CMS' responses confirm that manufacturers are required to aggregate price concessions provided to different entities. For example, CMS directly addressed and rejected the first of Defendant's two equivalent suggestions of discounts to different entities that Defendant claimed it should not aggregate – a prompt payment discount to a wholesaler and a price concession to an end-customer (*i.e.*, the same scenario addressed in the 2005 GPO report that is directly analogous to Defendant's conduct in this case):

> Comment*: **One commenter requested that when best price is determined, customary prompt pay discounts extended to wholesalers should not be aggregated with price concessions available to an end–customer under a contract administered through a wholesaler chargeback arrangement, regardless of whether the manufacturer negotiated the contract directly with the end–customer or with a third party.***
>
> Response: **We do not agree.** As we have previously stated, there is no basis to exclude these discounts. **Both the customary prompt pay discounts and other price concessions available to the end–customer are to be included in the determination of best price.**

(72 Fed. Reg. at 39199 (emphasis added).). JA0057-JA0062.

*The 2016 Final Rule with Comments and Responses.* In 2016, CMS again reiterated the same consistent position: manufacturers must aggregate and report all rebates, discounts, and price concessions that affect the price actually realized by the manufacturer, even those provided to different entities. One commenter suggested

17

that, exactly like Defendant's current argument, "CMS should adopt a policy where the manufacturer would only be required to combine price concessions on a single unit when . . . price concessions *will flow to a single entity*," and objected to including "in the best price available to one customer, as a price concession to that customer, a payment made to a completely different entity." 81 Fed. Reg. 5170, 5252–53 (Feb. 1, 2016) (emphasis added). Consistent with CMS' statements dating back to 1991 on this issue – as well as the clear language of the Rebate Statute, Rebate Agreement, and regulations – CMS rejected this argument, stating once more that ***"[a] manufacturer is responsible for including all price concessions that adjust the price realized by the manufacturer for the drug in its determination of best price," including when price concessions are given to "two entities."*** *Id.* (emphasis added). JA0062-JA0063.

Last year in May of 2023 (and before the Supreme Court vacated and reversed the District Court's prior Opinion), CMS announced a proposed rule that: (1) explicitly reaffirmed its prior interpretations of the Rebate Statute; and (2) explicitly rejected the District Court's earlier Opinion. CMS' rulemaking leaves no room for debate.

D. Proposal To Account for Stacking When Determining Best Price— (§ 447.505)

\* \* \*

18

*We addressed the question regarding stacking in the response to comments in the COD final rule, specifying that if multiple price concessions are provided to two entities for the same drug transaction, all discounts related to that transaction which adjust the price available from the manufacturer should be considered when determining best price….*

However, in the case *United States ex rel. Sheldon* v. *Allergan Sales, LLC.,* a relator alleged that a drug manufacturer failed to aggregate discounts provided to separate customers for purposes of determining best price, and the manufacturer argued that the stacking requirement was not sufficiently clear….

As noted, section 1927(c)(1)(C) of the Act defines the term "best price" to mean with respect to a single source drug or innovator multiple source drug of a manufacturer (including the lowest price available to any entity for any such drug of a manufacturer that is sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act), the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States. *We interpreted this section expansively as the statute refers to a manufacturer's lowest price "available" "to any" entity on this statutory list….*

Therefore, to remove any potential doubt prospectively, we are proposing to revise § 447.505(d)(3) *to add to the existing regulatory* <u>statement</u> that the manufacturer must adjust the best price for a covered outpatient drug for a rebate period if cumulative discounts, rebates or other arrangements to best price eligible entities subsequently adjust the price available from the manufacturer for the drug. We are adding the clarifying statement that cumulative discounts, rebates or other arrangements must be stacked to generate a final price realized by the manufacturer for a covered outpatient drug, *including discounts, rebates or other arrangements provided to different best price eligible entities.*

JA0458-JA0518 (emphasis added).

In briefing before the District Court, even Defendant conceded: (1) the

proposed rule requires aggregation of rebates to different entities in the calculation of Best Price; and (2) the proposed rule is consistent with the 2016 CMS rulemaking and commentary.  ECF 112 (Def.'s Memo at 19).[3]

In sum, Congress passed the Rebate Statute and confirmed the Rebate Agreement to ensure that manufacturers make no more net profit from selling a drug to Medicaid recipients than elsewhere.  The sole way to achieve this goal – one that the Rebate Statute, Rebate Agreement, CMS' Guidance, and regulations plainly require – is for manufacturers to determine the price actually realized, which means aggregating all price concessions when reporting the "Best Price" at which it sells its drugs.  That is, a manufacturer must report the lowest amount the *manufacturer* realizes on the sale of a unit of a drug, not the lowest amount any one particular purchaser in the distribution chain pays.

### C.    The District Court Doubled-Down on its Prior, Vacated Decision and Conducted a Flawed Analysis

In its prior opinion, the District Court applied an "objectively reasonable" standard in deciding Defendant's motion to dismiss – determining that the Rebate Statute and Rebate Agreement were ambiguous and concluding that a defendant cannot as a matter of law have scienter to violate an ambiguous statute.  The Supreme

---

[3] CMS has stayed moving forward on the proposed rule at this time.  The stay does not change the language or the past 30+ years of similar rulemaking and commentary.

Court specifically rejected this "objectively reasonable" standard in its *Schutte* decision last year – which is why the Supreme Court and this Court vacated the District Court's opinion and remanded the case to the District Court with instructions to follow *Schutte*.

On remand, the District Court doubled-down, paying lip service to *Schutte* and statutory construction analysis. The District Court cited to *Schutte* and statutory construction cases, but simply stopped its statutory analysis because the Rebate Statute and Rebate Agreement were ambiguous. The District Court concluded:

> I do not agree with Sheldon that the use of the term "any" in the Rebate Statute clearly establishes that a manufacturer must aggregate discounts to different entities in the chain of distribution….

> \* \* \*

> As used in the Rebate Statute, the term "any entity" could mean every entity in the chain of distribution or any one entity in the chain of distribution. No amount of searching for the semantic essence of the word "any" can cure the Rebate Statute of its ambiguity.

JA0888-JA0889. The District Court simply concluded that "any" and "all" and CMS Guidance were ambiguous or unpersuasive without conducting a full statutory interpretation of the Rebate Statute or Rebate Agreement.

The District Court punted and failed on its most important obligation. The District Court should have first conducted a statutory construction analysis and determined what the Rebate Statute and Rebate Agreement require – and second determine whether Sheldon's Amended Complaint, construed in a light most

favorable to Sheldon and drawing all reasonable inferences in a light most favorable to Sheldon, plausibly alleged scienter.  Those are two separate steps with separate analysis that cannot be combined!

Instead, the District Court once again conflated falsity and scienter and stopped its statutory analysis with ambiguity – again concluding that Defendant cannot have scienter to violate an ambiguous statute.

> I do not agree with Sheldon that the use of the term "any" in the Rebate Statute clearly establishes that a manufacturer must aggregate discounts to different entities in the chain of distribution, **such that, on that basis, Forest possessed the requisite scienter simply by reading the Rebate Statute.**

> \* \* \*

> As I see it, the "Best Price" provisions of the Rebate Statute and Rebate Agreement are equivalent in their ambiguity to the hypothetical instruction in *Schutte* to drive "reasonably."  **Therefore, the allegation that Forest was familiar with the terms of the Rebate Statute and Rebate Agreement does not a provide a basis on which to ascribe to Forest a culpable mental state under Schutte.**

> \* \* \*

> I am not persuaded that either party's preferred interpretation is clearly established by the unambiguous language of the Rebate Statute, Rebate Agreement, and related regulations.  As I have explained, there is considerable ambiguity in the definitions of "Best Price" contained in the materials that have been brought to the Court's attention.  Therefore, I cannot agree with Sheldon that the Rebate Statute, Rebate Agreement, and related materials clearly establish "that 'best Price' … means the price actually realized … for a single drug unit after stacking any and all price concession to all entities."  ECF 117 at 12.  Nor can I agree with Forest that these materials "make[] clear that a manufacturer's obligation is to report the lowest price it offers to any

22

one of the enumerated customer types." ECF 112-1 at 18. In short, the Rebate Statute, Rebate Agreement, and related regulations neither clearly require aggregation nor clearly disclaim the need for aggregation.

> ***In such a circumstance, I am constrained to conclude that Forest did not act in violation of the Rebate Statute, as interpreted in related regulatory materials.***

JA0888, JA0889, JA0890-JA0891, JA0902-JA0903 (emphasis added).

The District Court erred both in its basic responsibilities of statutory construction for falsity and applying the basic standard of review at the motion to dismiss stage on the issue of scienter, requiring reversal by this Court.

## STANDARD OF REVIEW

Appellate courts review a district court's Rule 12(b)(6) dismissal *de novo*.

*United States ex rel. Badr, v. Triple Canopy, Inc.,* 775 F.3d 628, 634 (4th Cir. 2015).

Appellate courts also review questions of statutory construction *de novo*. *Ross v. R.A.*

*North Dev., Inc*., 706 F.3d 245, 250 (4th Cir. 2013).

## SUMMARY OF THE ARGUMENT

On remand following the Supreme Court's decision in *Schutte*, the District Court made two critical errors that must be reversed by this Court.

First, the District Court failed to conduct an appropriate statutory construction analysis and therefore failed to determine that the Rebate Statute and Rebate Agreement, require aggregation of rebates. Aggregation is confirmed by the plain meaning and the context of the Rebate Statute and Rebate Agreement; and 30+ years of CMS rulemaking and Guidance.

Second the District Court improperly resolved scienter on a motion to dismiss, failing to accept Sheldon's factual allegations of scienter as true and failing to draw reasonable inferences from the allegations in favor of Sheldon (and not Defendant).

25

# **ARGUMENT**

To survive a motion to dismiss, a relator must state only a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Triple Crown*, 775 F.3d at 634. When reviewing a Rule 12(b)(6) motion, courts "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *Triple Crown*, 775 F.3d at 634; *E.I. du Pont*, 637 F.3d at 440.

The False Claims Act imposes civil liability where a defendant knowingly presents a "false or fraudulent claim" or "a false record or statement material to an obligation" that is owed to the Government. 31 U.S.C. § 3729(a)(1)(A), (B), (G). A claim or statement is false when it is made in violation of applicable law. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). Courts must interpret the applicable statute or regulation and determine whether a defendant's representations are accurate in light of the applicable law. *Id.*; *see also United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 701-02 (4th Cir. 2014); *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008).

For purposes of testing the sufficiency of Sheldon's allegations that Defendant violated §§ 3729(a)(1)(A) & (B) of the FCA, the Court must determine whether Sheldon plausibly alleged that: (1) Defendant made a false statement or engaged in a fraudulent course of conduct that was material in causing the government to pay out money or to forfeit moneys due to it; and (2) Defendant acted with requisite scienter.

26

*Rostholder*, 745 F.3d at 700. As outlined below, Sheldon has sufficiently and plausibly alleged Defendant violated the FCA, and the District Court's Opinion and Judgment must be reversed.

### A. The District Court Erred in Failing to Conduct an Appropriate Statutory Construction Analysis, and in Failing to Conclude that the Rebate Statute, and Rebate Agreement, Require Aggregation of Rebates and Discounts to Multiple Entities for the Same Drug Unit

The District Court concluded that the Rebate Statute, Rebate Agreement, and related regulations were ambiguous, (JA0902-JA0903) and yet did not determine what the Rebate Statute and Rebate Agreement actually require. The District Court concluded that they "neither clearly require aggregation nor clearly disclaim the need for aggregation" JA0903 – but a court cannot punt on the issue of statutory construction. The District Court must interpret the meaning of the Rebate Statute, Rebate Agreement, and related regulations to determine what they require and to determine falsity – and the District Court's failure to do so is plain error.

The plain language of the Rebate Statute and Rebate Agreement, consistent with Congressional intent, require aggregation of rebates and discounts for a particular drug unit when determining Best Price. The context of the Rebate Statute and Rebate Agreement also supports this interpretation. And if there is any doubt or ambiguity, the Rebate Agreement commands favoring the program and reference to CMS' 30+ years of rulemaking and Guidance is important.

27

This Court can reverse and remand to the District Court to conduct a proper statutory analysis. Alternatively, because legal questions are reviewed *de novo* on appeal, this Court can conduct the statutory analysis on its own and find that aggregation is required, and that Sheldon has plausibly alleged an FCA claim.

### 1. The Rebate Statute and Rebate Agreement Require Aggregation of Rebates and Discounts for a Single Drug Unit

If this Court decides to interpret the Rebate Statute and Rebate Agreement, this Court should conclude that they require aggregation of rebates and discounts for a single drug unit based on the clear command in the Rebate Agreement that "best price for a quarter shall be adjusted by the Manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized." JA0356-JA0357.

The rules for statutory interpretation are well settled: "When interpreting a statute, [courts must] 'first and foremost strive to implement Congressional intent by examining the plain language of the statute.'" *United States v. Powell*, 680 F.3d 350, 355 (4th Cir. 2012) (citations omitted). Courts must "give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011) (citation omitted) (alteration in original). "If the plain language is unambiguous, [the court] need look no further." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (citation omitted). That said, "[t]o determine a statute's

plain meaning, [courts] not only look to the language itself, but also the specific context in which the language is used, and the broader context of the statute as a whole." *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013) (citation omitted).

Importantly, the Supreme Court, when addressing the relationship between the Rebate Statute and Rebate Agreement, has held that the "statutory and contractual obligations, in short, are one and the same." *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011).  When interpreting the Rebate Statute, therefore, courts should view it through the lens provided by the Rebate Agreement – and vice versa.  Reading the Rebate Statute and Rebate Agreement as context for each other, the plain language Congress used, and Supreme Court and Fourth Circuit precedent confirm that "Best Price" means the lowest price actually realized by the manufacturer on a single unit of a drug after accounting for every price concession to any entity in the distribution chain.

The Rebate Statute sets forth the requirement that manufacturers must calculate Best Price by accounting for discounts provided to different entities.

(c) Amount of rebate

 (1) Basic rebate for single source drugs and innovator multiple source drugs

* * *

29

**(C)** For the purposes of this paragraph, the term "best price" means, with respect to a single source drug or innovator multiple source drug of a manufacturer, **the lowest price available from the manufacturer to any wholesaler, retailer, nonprofit entity, or governmental entity….** The **best price shall be inclusive of cash discounts, free goods, volume discounts, and rebates** (other than rebates under this section) and shall be determined without regard to special packaging, labeling, or identifiers on the dosage form or product or package.

42 U.S.C. § 1396r-8(c)(1)(C) (1991).

The Rebate Agreement provides:

The terms defined in this section will, for the purposes of this agreement, *have the meanings specified in section 1927 of the Act as interpreted and applied herein:*

*I. Definitions*

* * *

(d) **"Best Price" means**, with respect to Single Source and Innovator Multiple Source Drugs, **the lowest price at which the manufacturer sells the Covered Outpatient Drug to any purchaser in the United States in any pricing structure….** in the same quarter for which the AMP is computed. Best price includes prices to wholesalers, retailers, nonprofit entities, or governmental entities within the States….

**The best prices shall be inclusive of cash discounts, free goods, volume discounts, and rebates….**

It shall be determined on a unit basis without regard to special packaging, labeling or identifiers on the dosage form or product or package…. **The best price for a quarter shall be adjusted by the Manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized.**

JA0356-JA0357 (emphasis added). The Rebate Agreement also provides:

**The rebate agreement shall be construed in accordance with Federal common law and ambiguities shall be interpreted in the manner which best effectuates the statutory scheme.**

JA0365 (emphasis added).

There are two key terms that drive the statutory analysis. First, the term "prices actually realized" is susceptible to only one reasonable interpretation – "actually realized" means the net amount received by the *manufacturer* because the program only applies to *manufacturers*. It is implausible to interpret "actually realized" as the lowest amount any one particular purchaser in the distribution chain pays or only the highest rebate paid by the manufacturer.

Second, the term "any" must be read expansively: Best Price is the price offered to "any purchaser" in "any pricing structure." When a manufacturer offers an indirect discount to an entity in the distribution chain, e.g., providing a rebate to the entity that purchases the drug from a wholesaler, it is no different than the wholesaler itself providing the discount and then receiving a chargeback that reduces its price. That is why Best Price includes "any purchase" in "any structure" – to capture the complex kind of discount scheme that Defendant set up. As both the Supreme Court and this Court have held, "any" is an expansive term. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-19 (2008); *United States v. Maxwell*, 285 F.3d 336, 341 (4th Cir. 2002) ("when the word 'any' is 'used

as a function word to indicate the maximum or whole of a number or quantity,' for example, 'give me [any] letters you find' and 'he needs [any] help he can get,' the word 'any' means 'all'"); *see also Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999) ("[W]e interpret 'any' to mean 'all' . . . ."); *Alexander S. v. Boyd*, 113 F.3d 1373, 1383 (4th Cir. 1997) (same). Accounting for this language, the price "actually realized" means the price the *manufacturer* realizes after accounting for and aggregating *all* discounts.

Similarly, § I(d) of the Rebate Agreement specifies that a manufacturer's Best Price be "calculated to include *all* sales and associated rebates, discounts and other price concessions *provided by the manufacturer to any entity*" for a single drug "unit" such that the price is "adjusted *by the manufacturer* if cumulative discounts, rebates or other arrangements subsequently *adjust the prices actually realized*." 56 Fed. Reg. 7049 (Feb. 21, 1991) (emphasis added). Thus, like the Rebate Statute, the Rebate Agreement includes the expansive term "any" when addressing how Best Price is calculated.

Congressional intent is clear – Congress wanted the "lowest price" when calculating Government pricing. And that's not a surprise – the Government always wants the lowest price! Congress obviously used "any" and "all" to be expansive in this context. Congress used terms and phrase – "inclusive of cash discounts, free goods, volume discounts, and rebates," "to any purchaser in the United States in any

pricing structure," and "adjusted by the manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized" – to confirm its intent that Congress wanted the lowest price a manufacturer parts with a particular drug unit, regardless of what a party called the particular discount or rebate, and regardless of the particular pricing structure. Congress cannot predict the nomenclature of every pricing or marketing scheme for any and every drug unit – but it can confirm that the intent of the Rebate Statute and Rebate Agreement is to use the lowest price actually realized in any pricing structure so that the Government gets the best deal. This is hardly novel, or unexpected.

Contrary to the conclusion of the District Court, the plain language and intent of the Rebate Statute and Rebate Agreement are clear. Best Price means: the lowest price available from the manufacturer to any single or combination of covered entities for a single drug unit; Best Price is the price actually realized by the manufacturer after including all cash discounts, free goods, volume discounts, and rebates regardless who received that concession. The Court should conclude that the Rebate Statute and Rebate Agreement require aggregation of rebates and discounts for a single drug unit.

**2.     The Specific Context in Which the Language is Used, and the Broader Context of the Rebate Statute and Rebate Agreement, Support the Conclusion that the Rebate Statute and Rebate Agreement Require Aggregation of Rebates and Discounts for a Single Drug Unit**

For statutory construction purposes, language matters – but context matters as well.  The fundamental purpose of the statutory framework for the Rebate Statute and Rebate Agreement is for the Government to get the best price a manufacturer is willing to part for a drug.  The Rebate Statute and Rebate Agreement should be interpreted and applied with this context in mind.  Here, with this context in mind, there are at least two reasons why Defendant's unique pricing scheme required Defendant to stack rebates when reporting Best Price under these circumstances.

**a.     Average Manufacturer Price ("AMP") Must be Larger than Best Price**

The first reason why Defendant must aggregate the rebates is because the statutory formula for calculating the rebate owed by Defendant dictates that AMP must be larger, not smaller than Best Price.  The Rebate Statute required Defendant to calculate the Medicaid rebate as **"the difference between the average manufacturer price and the best price."**  42 U.S.C.A. § 1396r-8(c) (emphasis added).  Defendant argues that AMP requires aggregation but Best Price does not, which could lead to a situation where AMP is lower than Best Price.  ECF 112 (Def.'s Memo at 12-13, 17).  It defies logic for the District Court or the Defendant to think it can report its average manufacturer price lower than its best price.

34

That twisted logic creates a potential where AMP – the average – could be lower than Best Price – which would render the Medicaid Rebate calculation a nullity. Indeed, Justice Wynn pointed out the recklessness and absurdity of treating AMP as a smaller number than Best Price for the same transaction:

> But if average manufacturer price could incorporate stacked rebates but best price could not, then drug manufacturers would be stuck subtracting apples from oranges. **It also would lead to bizarre results: normally, we would expect the best price to be lower than the average price**. But if average price could include rebates from multiple entities but best price cannot, the difference between the two would diminish or even disappear. Such a result would be out of step with Congress's intent, which was to "achieve significant Medicaid savings" by getting the "same discounts" that private entities enjoy. H.R. Rep. No. 101-881, at 96, 98, 1990 U.S.C.C.A.N. at 2108, 2110.

*Sheldon I, LLC*, 24 F.4th 340, 373 (4th Cir.) (vacated).

Similarly, DOJ pointed out the absurdity of aggregating rebates for AMP and not for Best Price in its amicus brief filed in support of Sheldon in *Sheldon I*:

> But if the "average manufacturer price" clearly requires aggregated discounts, then the "best price" must as well, as **it would make little sense for the "average" price to be lower than the "best" price**.

JA0551-JA0568.

In short, the statutory formula of AMP minus Best Price gives context to the statutory interpretation and demands that Best Price be a lower number than AMP. A court cannot possibly interpret the Rebate Statute and Rebate Agreement as allowing a manufacturer to report 60 cents for AMP but 80 cents for Best Price based on the same transaction.

### b.   AMP and Best Price Use Similar Language

The second reason why aggregation in this context is required for both AMP and Best Price is because the Rebate Statute and Rebate Agreement use similar language to define AMP and Best Price.  The District Court opined that because the language is not identical between AMP and Best Price, there must be a difference, and that difference somehow can only mean that because AMP requires aggregation Best Price cannot.  Not true.  It is not necessary for Congress to use identical language for results to be similar.  In any event, the language is not as dissimilar as the District Court claims. AMP is defined in the statute as follows:

> The term "average manufacturer price" means, with respect to a covered outpatient drug of a manufacturer for a rebate period, **the average price paid to the manufacturer** for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade, after deducting customary prompt pay discounts.

42 U.S.C. § 1396r-8(K)(1)(a) (emphasis added).  AMP is defined in the Rebate Statute as follows:

> [T]he average unit price **paid to** the Manufacturer for the drug in the States by wholesalers for drugs distributed to the retail pharmacy class of trade…. AMP includes cash discounts allowed and all other price reductions…, which reduce the actual price paid. *** **The Average Manufacturer Price for a quarter must be adjusted by the Manufacturer if cumulative discounts or other arrangements subsequently adjust the prices actually realized**.

56 Fed. Reg. 7049 (Feb. 21, 1991) at I(a) (Rebate Agreement) (emphasis added).

Again, Best Price is defined in the statute as follows:

The term "best price" means, with respect to a single source drug or innovator multiple source drug of a manufacturer, **the lowest price available from the manufacturer** during the rebate period **to any wholesaler**, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity.

42 U.S.C. § 1396r-8(c)(1)(C) (emphasis added).  And again, Best Price is defined in

the Rebate Agreement as follows:

'Best Price' means…. the **lowest price at which the manufacturer <u>sells</u>** the Covered Outpatient Drug **to any purchaser** in the United States **in any pricing structure** (including capitated payments), in the same quarter for which the AMP is computed.  **Best price includes prices to wholesalers, retailers, nonprofit entities, or governmental entities…. The best prices shall be inclusive of cash discounts, free goods, volume discounts, and rebates….  The best price for a quarter shall be adjusted by the manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized.**

56 Fed. Reg. 7049 (Feb. 21, 1991) at I(d) (emphasis added).

Defendant's argument, accepted by the District Court, that AMP requires

aggregation, but Best Price does not, relies on isolated words in the Rebate Statute

that are not placed in context and ignores that the language in the Rebate Agreement,

which has the same force of law as the Rebate Statute.  *See Astra*, 563 U.S. at 114.

Indeed, Defendant promised to calculate Best Price based upon the Rebate

Agreement that it signed.

AMP means the price "paid to" Defendant by a wholesaler or retailer and Best

Price means the lowest price Defendant "sells to" a wholesaler or any other entity

from the list of qualifying purchasers.  While there is slight variation of words

between "paid to" and "sells to," both AMP and Best Price use *identical* language requiring drug manufacturers to adjust both AMP and Best Price if "***other arrangements subsequently adjust the prices actually realized***." This is the controlling language requiring aggregation, not the terms "paid to" or "sells to" read in isolation. Accordingly, the "price actually realized" used in both AMP and Best Price demands that aggregation be the same in both. This Court should not read the slight variation in language between AMP (e.g. paid to) and Best Price (e.g. sells to) to reach incongruous results regarding *aggregation*. Moreover, if there is any ambiguity between "paid to" and "sells to", the Rebate Agreement stated that "ambiguities shall be interpreted in the manner which best effectuates the statutory scheme."

The context of the Rebate Statute and Rebate Agreement further supports the conclusion that the Rebate Statute and Rebate Agreement require aggregation of rebates for a single drug unit. Again, a court cannot possibly interpret the Rebate Statute and Rebate Agreement as allowing a manufacturer to aggregate rebates paid to multiple entities for reporting AMP but limit rebates to just one of the two entities when reporting Best Price based on the same transaction. Indeed, for both AMP and Best Price require calculations based on "prices actually realized."

### 3.     CMS' 30+ Years of Rulemaking and Guidance are Relevant and Support Stacking of Rebates and Discounts

Historically, in cases where a court determined that a statute was ambiguous, the court would defer to an agency's reasonable interpretation of an ambiguous statute. *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 844 (1984); *Alvarez-Pineda v. Barr*, No. 19-1484, 2020 U.S. App. LEXIS 37492, *6 (4th Cir. Dec. 1, 2020). The Supreme Court's recent decision in *Loper Bright Enterp. v. Raimondo,* 144 S. Ct. 2244 (2024) generally abrogated "*Chevron* deference," but CMS' 30+ years of rulemaking and guidance are still relevant to the Court's analysis.

The operative language from the Supreme Court in *Loper Bright* is clear:

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may inform that inquiry. ***And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.***

*Id*. at 2273 (emphasis added). In this case: (1) the Rebate Statute and Rebate Agreement clearly require stacking of rebates when calculating Best Price; (2) Congress expressly and broadly delegated authority to the Secretary/CMS to create the Rebate Agreement and issue rules and guidance to implement the Medicaid Rebate Statute; and (3) for more than 30 years, CMS has engaged in consistent rulemaking, consistent with that delegation, and issued guidance within its constitutional limits. In this case, consistent with *Loper Bright*, CMS was delegated

broad and express authority and CMS has acted within that authority – such that the Court should "respect the delegation" and be persuaded by CMS' interpretation of the Rebate Statute and Rebate Agreement.

Under Title 42 of the U.S. Code, Congress gave the Secretary broad and express authority to "prescribe such regulations as may be necessary to carry out the administration of [Medicare and Medicaid] . . . ." 42 U.S.C. § 1395hh(a)(1). Specifically, "[i]n the case of the Medicaid payment statute, Congress expressly conferred on the Secretary authority to review and approve state Medicaid plans as a condition to disbursing federal Medicaid payments," and "the Secretary is charged with ensuring that each state plan complies with a vast network of specific statutory requirements, *see generally* § 1396a, including the prescription rebate agreement provision in section 1396r-8." *Pharmaceutical Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 822 (D.C. Cir. 2004); *see also Hardy Wilson Mem. Hosp. v. Sebelius*, 616 F.3d 449, 457 (5th Cir. 2010) (Congress's delegation of authority to the agency in the Medicare and Medicare area is "extremely broad.") (citation omitted).  In this case, there is no dispute regarding the delegation of authority to the Secretary and CMS.

Pursuant to Congress' express and broad delegation of authority, and as outlined above, the Secretary and CMS have issued consistent guidance and notice-and-comment rulemaking expressly requiring that manufacturers aggregate all

rebates, discounts, and price concessions across all entities that adjust the price actually realized by the manufacturer for a single pill when calculating Best Price, including:

- The 1991 and 1994 Program Releases

- The 2006 Proposed Rules (Fed. Reg. 77174)

- The 2007 Final Rule with Comments and Responses (72 Fed. Reg. 39142)

- The 2016 Final Rule with Comments and Responses (81 Fed. Reg. 5170)

The Secretary and CMS were clear on their interpretation and application of the Rebate Statute and Rebate Agreement – especially with the 2023 proposed rulemaking announced last year in response to the District Court's prior, vacated opinion.

Post-*Loper Bright*, it is important to note that Congressionally delegated authority is often conveyed through the agency's power to engage in notice-and-comment rulemaking – and when Congress has declined to act on repeated opportunities to alter or amend a statute or to revoke the Secretary's rulemaking authority, it constitutes persuasive evidence that the agency interpretation is the one Congress intended. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 159 (2013) (Supreme Court explained Congress amended § 1395 several times, but left untouched Secretary's rulemaking authority and outer time limit set by Secretary for

an extension upon a showing of good cause); *see also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (internal quotation and alteration omitted) (Congress' choice not to amend provision interpreted by Agency is "persuasive evidence that the [Agency's] interpretation is the one intended by Congress.").

In this case, there is no question that Congress explicitly delegated authority to the Secretary and CMS.  Indeed, Congress commanded CMS to create the Rebate Agreement and then Congress ratified the Rebate Agreement by continuing its use as drafted for over 30 years while amending the Rebate Statute numerous times.  ***The Secretary and CMS have also engaged in notice-and-comment rulemaking consistent with that delegation for more than 30 years – and there is no evidence that Congress revoked the delegation or that CMS exceeded its delegated authority.***  In this case, the Supreme Court's decision in *Loper Bright* reaffirms that the Court should respect the delegation to CMS' consistent 30 year interpretation of the Rebate Statute and Rebate Agreement.

The Rebate Statute and Rebate Agreement require stacking of rebates and discounts not only for AMP but also for Best Price whenever it affects the prices actually realized by the manufacturer.  If this Court believes that the Rebate Statute and Rebate Agreement are ambiguous in any way, then this Court should take into account CMS' consistent rulemaking and guidance, which also clearly requires

42

stacking of rebates and discounts for both AMP and Best Price.

### 4. The District Court Erred In Not Conducting An Appropriate Statutory Construction of the Rebate Statute and Rebate Agreement, Requiring Reversal

The District Court failed in its basic responsibility to interpret the Rebate Statute and Rebate Agreement. The District Court concluded that the Rebate Statute and Rebate Agreement are ambiguous, and punted on completing a statutory construction analysis. The District Court concluded that "any" was ambiguous and could mean "every entity" or "one entity" (JA0889) – and did not finish the analysis. The District Court determined that all of CMS' rulemaking and guidance was "ambiguous" or was not helpful to establish Defendant's intent (JA0889-JA0899) – which is also not accurate.

The District Court also concluded that "Congress and CMS have had years to inform manufacturers, in clear and unambiguous terms of what was expected of them…. To the extent that Defendant engaged in conduct that Congress or CMS should have proscribed, it is not this Court's role to rectify the error." JA0906. Respectfully, as outlined above, Congressional silence in response to multiple rulemaking efforts supports deferral to the agency's interpretation, not chastisement as the District Court suggested.

The District Court was required to engage in appropriate statutory construction of the Rebate Statute and Rebate Agreement and to determine whether

"prices actually realized" by the manufacturer required stacking, and the Court failed in its duty under the circumstances.

A defendant's compliance with the law is an objective "either/or" proposition – the defendant "either complied with the [law] or it didn't." *United States ex rel. Drakeford v. Twomey*, 792 F.3d 364, 383-84 (4th Cir. 2015). Even if a statute or regulation is technical or complex, as Medicaid regulations can be, "[its] meaning is ultimately the subject of judicial interpretation, and it is [defendant's] compliance with these regulations, as interpreted by the court, that determines whether [defendant's] practices resulted in the submission of a false claim." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999). A defendant's reasonable interpretation of a technical, complex, or ambiguous statute or regulation does not preclude falsity. *Oliver*, 195 F.3d at 463; *see also Drakeford*, 792 F.3d at 383-84; *Bourseau*, 531 F.3d at 1164; *United States ex rel. Care Alts.*, 952 F.3d 89, 95 (3d Cir. 2020). The Supreme Court has also confirmed that falsity includes common law fraud concepts that permit suits based on ambiguous statements as long as the defendant acted with sufficient knowledge. *Escobar*, 579 U.S. at 187; *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 201 (2015) (Scalia, J., concurring in part and concurring in judgment); *see also United States v. Mallory*, Nos. 18-1811, 18-1812, 18-1813, 2021 U.S. App. LEXIS

44

5073 at *9 (4th Cir. Feb. 22, 2021) (whether a defendant can be held liable for failing to comply with an ambiguous term goes to knowledge, not falsity).

* * *

In sum, the District Court erred in not conducting a proper statutory construction analysis of the Rebate Statute and Rebate Agreement. This Court can either remand the case to the District Court to conduct a proper statutory construction analysis of falsity, or conduct the proper analysis on its own, as outlined above. Under either scenario, the District Court's Opinion on falsity must be reversed. [4]

---

[4] The District Court's discussion of *United States ex rel. Wilson v. Kellogg Brown & Root, Inc*., 525 F.3d 370 (4th Cir. 2008), ECF 130 (Opinion at 56-60), also illustrates that the Court was still applying the defunct "objective falsehood" standard and conflating falsity and scienter, despite Supreme Court and Fourth Circuit case law to the contrary. The District Court started its discussion by focusing on the question of "falsity," ECF 130 (Opinion at 56), but then concluding that the Rebate Statute is ambiguous and concluding that Forest "did not act in violation of the Rebate Statute." ECF 130 (Opinion at 59).

By its very nature, combining the terms "objective" and "falsehood" for the test for falsity is actually conflating falsity with scienter. The Supreme Court made clear in *Schutte* that the "two essential elements of an FCA violation are (1) the falsity of the claim and (2) the defendant's knowledge of the claim's falsity." 598 U.S. at 747.

Wilson is no longer good law because: (1) *Drakeford* clarified that falsity is a legal determination not based upon proof of falsehood, i.e., the defendant's knowledge of falsity; and (2) the Supreme Court in *Schutte* flatly rejected the so-called "objective falsehood" requirement and held instead that the "FCA's scienter element refers to respondents' knowledge and subjective beliefs – not to what an objectively reasonable person may have known or believed." *Id.* at 749.

45

**B.** **The District Court Erred in Deciding Scienter at the Motion to Dismiss Stage, Conflating Falsity and Scienter and Failing to Construct the Scienter Allegations in the Amended Complaint in a Light Most Favorable to Sheldon**

Despite the clear instructions from the Supreme Court and this Court to apply *Schutte*, the District Court similarly failed to do so when addressing scienter. First, the District Court failed to properly and separately address the legal standards for each of the three forms of scienter. Second, the District Court failed to accept factual allegations as true and draw reasonable inferences in favor of Sheldon.

As this Court is well aware, the Supreme Court recently set the standard for scienter analysis in the FCA context in *Schutte*.

> [T]he FCA defines the term 'knowingly' as encompassing three mental states: First, that the person 'has actual knowledge of the information,' § 3729(b)(1)(A)(i). Second, that the person 'acts in deliberate ignorance of the truth or falsity of the information,' § 3729(b)(1)(A)(ii). And, third, that the person 'acts in reckless disregard of the truth or falsity of the information,' § 3729(b)(1)(A)(iii). In short, **either** actual knowledge, deliberate ignorance, or recklessness will suffice.

598 U.S. at 749-50 (emphasis added). A defendant can make a statement with knowledge of falsity even if a reasonable person could have thought that it was in compliance with an objectively reasonable but incorrect interpretation of a statute or regulation. *Id.* at 752, 754; *see also Escobar*, 579 U.S. at 190-92. And particularly important for this case given the District Court's Opinion:

> Even though the phrase "usual and customary" may be ambiguous on its face, such facial ambiguity alone is not sufficient to preclude a finding that respondents knew their claims were false.

46

*Schutte*, 598 U.S. at 749.

Based on overlapping fact patterns, Sheldon alleges Defendant acted separately with: (1) actual knowledge; (2) deliberate ignorance; and (3) reckless disregard. Only one is needed to prove a FCA violation. *Id.* Unfortunately, the District Court did not properly apply each of these standards and failed to accept the allegations in the Amended Complaint as true and provide Sheldon with reasonable inferences drawn from the allegations.[5]

The District Court erred, and the error must be reversed.

### 1.    Sheldon's Amended Complaint Adequately Pleads Actual Knowledge

First, the Amended Complaint alleges Defendant acted with *actual knowledge* by failing to use its true "price actually realized" when reporting Best Price. JA0033-JA0037, JA0060, JA0067, JA0069-JA0071. The Supreme Court recently established that "actual knowledge" means when "that the person 'has actual knowledge of the information" necessary to inform it that the claim is false. *Schutte*, 598 U.S. at 749. The Supreme Court also noted in a footnote that the FCA term

---

[5] The Amended Complaint need only allege state of mind generally; there is no heightened requirement for pleading state of mind. *See* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). While the District Court did not reach the issues, Sheldon's Amended Complaint satisfies Rule 9(b).

"information" does not merely refer "to purely factual information, like the number of drugs sold.   But the definition of 'information' is broad, referring to all 'knowledge obtained from investigation, study, or instruction.'"   *Id.* at n.3 (cites omitted). In other words, would a jury have enough information to find that the defendant had enough information to know that the claims were false.

Here, Sheldon alleges a unique marketing scheme whereby: (1) Defendant sold pills to its wholesaler, McKesson; (2) Defendant received money from McKesson relating to the sale of pills; and (3) Defendant paid rebates to other entities in the process of Defendant selling a single pill to McKesson.  JA0033-JA0034, JA0036-JA0037, JA0065-JA0067, JA0068-JA0069.  Defendant sold and delivered Drug X to McKesson for $1.00.  JA0066-JA0067, JA0068-JA0069.  McKesson was not able to sell Drug X to certain customers who refused to buy Drug X from McKesson without a discount larger than the price it buys the pills from Defendant. JA0033-JA0034,  JA0036-JA0037,  JA0065-JA0067,  JA0069.    For  instance, Pharmacy Providers (e.g. Pharmerica) demanded a 20-cent rebate and Private Insurers (e.g. Humana) demanded a 20-cent rebate or each would buy pills from competitors.  JA0033-JA0034, JA0036-JA0037, JA0065-JA0067, JA0069.  As a result, Defendant still sold the pill to McKesson for $1.00 but had to pay a 20-cent rebate to Pharmerica and another 20-cent rebate to Humana to enable McKesson to sell the pill to Pharmerica for patients with Humana insurance.  Unless Defendant

paid both rebates, McKesson would not buy pills from Defendant for resale to Pharmerica for patients with Humana insurance.  JA0033-JA0034, JA0036-JA0037, JA0065-JA0067, JA0069.

Sheldon alleges the Defendant possessed actual knowledge for two reasons. First, Defendant knew the Rebate Agreement required Defendant to take into account such "other arrangements" that affect the "price actually realized" by Defendant on the sale of that single pill to its wholesaler.  Second, Defendant held internal meetings where it made a decision to stop paying rebates to two separate entities because that would set a best price and hired a company (DNA) to catch and stop making two sets of rebates.  JA0035-JA0037, JA0069-JA0071.  However, in order to break into a new market, Defendant chose not to use the program and decided to pay two sets of rebates to certain preferred customers.

Unfortunately, the District Court misunderstood the allegations in the Amended Complaint and also improperly gave all reasonable inferences ***to the Defendant***. For example, according to the District Court:

> According to the Relator, Forest "implemented [the] data audit process" because it was "[a]ware of [its] potential Best Price violation based upon double rebate claims from its customers." Id. ¶ 43.  In contrast, Forest claims that it conducted the audit "for entirely legitimate business reasons," namely, "to eliminate duplicate rebate payment to [certain] customers." ECF 112-1 at 33.
>
> ***As I see it***, the Relator's allegation that Forest conducted an audit intended to identify instances of double rebates is, without more, insufficient to plead scienter.  The Relator has not pleaded any specific

facts that would substantiate the contention that the audit was undertaken with a culpable mental state. ***And, there are any number of benign "'alternative explanation[s]'" for Forest's decision to conduct the audit.*** Iqbal, 556 U.S. at 682 (quoting Twombly, 550 U.S. at 567). Absent specific allegations concerning the purpose of the audit, the Relator's claim that Forest conducted the audit in an effort to rectify a reporting practice it knew or suspected to be wrong is a "conclusory" allegation "not entitled to be assumed true." *See Iqbal*, 556 U.S. at 681.

JA0899. The District Court decided to interpret the factual allegations in a light most favorable to Defendant, not to Sheldon, and drew an inference from failing to use its normal audit practices for favored customers in favor of Defendant, not for Sheldon. Moreover, the factual allegations in the Amended Complaint are a little different than the District Court (and Defendant) identified:

> 69.    In 2008, top level managers at Forest held meetings and prepared reports focusing on the fact that two rebates were occasionally claimed or paid on the same drug being dispensed to a single patient. For example, a patient might have both primary and secondary medical insurance. If both the primary insurer and the secondary insurer each paid the patient's medical care, specifically his or her pharmaceutical drug treatment, then each could potentially seek a rebate on the same drug disbursements, thereby creating a double rebate on the same dispensed drug. Aware of their potential Best Price violation based upon double rebate claims from its customers, Forest implemented a data audit process for all rebate claims submitted to Forest by customers in the Commercial market, specifically private insurance companies. Forest contracted with Data Niche & Associates ("DNA") to develop this data scrubbing process….

> \* \* \*

> 71.    Nevertheless, despite not allowing double rebates to occur on the Commercial side due to Best Price concerns, Forest deliberately chose not to institute the DNA process on the Pharmacy Provider/GPO side to avoid negatively impacting its relationships with major Pharmacy

50

> Provider/GPO drug purchasers and preserve shareholder profits. Instead, in the Pharmacy Provider/GPO market, Forest has chosen to pay such double rebates but Forest does not account for those double rebates when it reports Best Price to the Secretary of Health and Human Services, resulting in Best Price violations quarter by quarter.

JA0069-JA0071.  The factual allegations in the Amended Complaint clearly allege actual knowledge – not a benign, reasonable explanation – and it was error for the District Court to take this fact issue away from the jury.

### 2. Sheldon's Amended Complaint Adequately Pleads Deliberate Ignorance

Second, the Amended Complaint alleges a different set of facts requiring a different analysis for establishing whether Defendant acted with *deliberate ignorance*.  The Supreme Court stated that deliberate ignorance "encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity."  *Schutte*, 598 U.S. at 751; s*ee also Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1211 (9th Cir. 2019) ("[t]he deliberate ignorance standard can cover 'the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted.'" (citation omitted)).

In this case, Defendant was so concerned that CMS rulemaking would impact its Best Price reporting that it hired outside counsel to submit a comment during rulemaking asking CMS to change its rules regarding the term Best Price to

eliminate aggregation.    JA0060-JA0063.    In the letter to CMS, Defendant specifically acknowledged that the "preamble to the proposed rule suggests that CMS views best price as the amount realized by the manufacturer on a sale rather than the lowest price to a particular customer." JA0060.    The Amended Complaint alleges:

> 48.    [T]hrough counsel Forest acknowledged the language of the proposed rule 'suggests that CMS views best price as the net amount realized by the manufacturer on a sale rather than the lowest price to a particular customer,' so Forest argued it is 'critical that the final rule clarify that only discounts and price concessions to the same entity to which a drug is sold should be included in the computation of best price' and 'prices to unrelated entities in the chain of distribution should not be aggregated . . . even if they concern the same unit of a drug.'

JA0060.  CMS did not change its language in response to the comment.

The District Court acknowledged that Defendant had a duty to inquire, but ruled, as a matter of law, the duty was met by making the generic rulemaking comment without specifying any particulars and without any follow up to get an answer to Defendant's questions that still remained unknown to Defendant.  Again, not true.  Submitting a generic question in notice and comment rulemaking does not insulate the company from liability – the question is what the company did with the information after receiving CMS response, whether responsive or not – and Sheldon alleges that Defendant knew CMS required stacking, did not change their Best Price reporting, and did not inquire further.

As the Supreme Court made clear in *Schutte*: deliberate ignorance "encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity." *Schutte*, 598 U.S. at 751. Deliberate ignorance cannot be any clearer than when Defendant's own attorneys admit the preamble suggests aggregation and then cuts off all communication when CMS did not change the regulation. A jury could find that Defendant knew they faced a substantial risk that they were not calculating Best Price properly because it hired an attorney to submit a comment that admitted CMS had a differing view and asked CMS to change its regulations. A jury also could find that Defendant intentionally avoided taking steps to confirm the truth or falsity because once it engaged with CMS it must continue the dialog. A jury also could find deliberate ignorance where Defendant had enough of a concern to hire outside counsel to write a letter to CMS during notice and comment rulemaking pertaining but did not change its conduct after receiving CMS' response to its letter.

The Supreme Court made clear that burying one's head in the sand is actionable deliberate ignorance under the FCA, which is what Sheldon alleges. The factual allegations in the Amended Complaint clearly allege deliberate ignorance and it was error for the District Court to take this fact issue away from the jury.

### 3.    Sheldon's Amended Complaint Adequately Pleads Reckless Disregard

Third, the Amended Complaint alleges that Defendant acted with *reckless disregard*. The District Court failed to specifically address reckless disregard but lumped it together generically as scienter.

The Supreme Court in *Schutte* specifically addressed reckless disregard as a standalone third way of proving scienter.  According to the Court, "the term 'reckless disregard' similarly captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Schutte.*, 598 U.S. at 751.   Reckless disregard exists either when the defendant was subjectively aware of a risk or the risk was objectively apparent. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *accord* Escobar, 579 U.S. at 191 ("[B]ecause a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to appreciate the materiality of that condition would amount to "reckless disregard" … even if the Government did not spell this out.").  In *Schutte*, the Court held that after the fact justifications or clever arguments created by legal counsel are not permitted.  Indeed, "the focus is not, as respondents would have it, on *post hoc* interpretations that might have rendered their claims accurate.  It is instead on what the defendant knew when presenting the claim." *Schutte,* 598 U.S. at 752.  The Court also stated that *Safeco* is not applicable (which is the case the District Court relied upon in its earlier opinion). *Id.* at 1402–03.

Here, Defendant possessed consciousness of a substantial and unjustifiable risk that their claims are false and submitted the claims anyway. JA0060-JA0071. The District Court did not construe these allegations in a light most favorable to Sheldon. To the contrary, the District Court decided that Defendant's "assumed familiarity" with the Rebate Statute and Rebate Agreement would not even be considered by the Court. JA0887.

Even prior to *Schutte,* courts have upheld reckless disregard even when a statute is ambiguous and a defendant interprets it in an objectively reasonable way, *if* there are facts alleged that a jury "might" find that the defendant was warned away from its interpretation. *See United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015); *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008). Here, Sheldon alleges that the 2007 Notice and Comment rulemaking guidance warned Defendant away from its belief that aggregation applies to AMP but not Best Price. JA0060-JA0062. Indeed, Defendant was so concerned about its interpretation that it hired an outside law firm to ask CMS to change the regulations. JA0060. However, CMS did not change the regulations but left it intact in a manner in which Defendants admit that it suggests requiring aggregation. JA0060-JA0062. Whether a defendant might have been warned away from its interpretation of a statute is an issue of fact that cannot be resolved at the pleadings stage. *United States v. Celgene Corp.*, 226 F. Supp. 3d

55

1032, 1052 (C.D. Cal. 2016) ("Whether [defendant] was warned away from the view it took is a question of fact."); *United States v. Vandewater Int'l*, No. 2:17-cv-04393-RGK-KS, 2020 U.S. Dist. LEXIS 138240, at *27 (C.D. Cal. June 23, 2020) (same); *United States ex rel. Streck v. Bristol-Myers Squibb Co.*, 370 F. Supp. 3d 491, 497 (E.D. Pa. 2019) (same); *Purcell*, 807 F.3d at 288 (whether a defendant has been warned away "cannot readily be labeled as a 'purely legal' question"). Because "warned away" is an issue of fact, courts cannot resolve that aspect of an FCA case at the pleadings stage. *See, e.g., United States v. Newman*, No. 16-1169 (CKK), 2017 U.S. Dist. LEXIS 131056, at *25 (D.D.C. Aug. 17, 2017).

The Amended Complaint clearly allege reckless disregard and it was error for the District Court to take this fact issue away from the jury.

\* \* \*

The conclusion in *Schutte* is directly applicable to this case.

> Under the **FCA**, petitioners may establish **scienter** by showing that respondents (1) actually knew that their reported prices were not their "usual and customary" prices when they reported those prices, (2) were aware of a substantial risk that their higher, retail prices were not their "usual and "customary" prices and intentionally avoided learning whether their reports were accurate, or (3) were are of such **[****27]** a substantial unjustifiable risk but submitted the **[****17]** claims anyway. § 3729(b)(1)(A). If petitioners can make that showing, then it does not matter whether some other, objectively reasonable interpretation of "usual ad customary" would point to respondents' higher prices. For **scienter**, it is enough if respondents believed that their claims were not accurate.

*Schutte*, 598 U.S. at 757.

56

In sum, Sheldon must prove only one of three forms of scienter under the FCA. Sheldon alleges general and specific facts, accepted as true and with all reasonable inferences drawn from the allegations in a light most favorable to Sheldon, establishing each type of scienter sufficient for a jury to find: (1) actual knowledge, (2) deliberate ignorance, and (3) reckless disregard.[6]

Accordingly, the District Court improperly ruled that Sheldon's Amended Complaint did not plausibly allege scienter.[7]

---

[6] Most post-*Schutte* decisions have recognized that scienter is a fact issue and denied motions for summary judgment, much less also denied motions to dismiss. *See United States ex rel. Miller v. Reckitt Benckiser Grp. PLC,* 698 F. Supp. 3d 889, 916–17 (W.D. Va. 2023) (denying motion to dismiss in Best Price case and following *Schutte*); *United States ex rel. Heath v. Wisconsin Bell, Inc.,* 92 F.4th 654, 662–64 (7th Cir.), *cert. granted sub nom. Wisconsin Bell, Inc. v. United States*, 144 S. Ct. 2657 (2024); *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.,* No. 2:15-CV-00119-JNP-DAO, 2024 WL 2857885, at *6–9 (D. Utah Mar. 29, 2024); *United States ex rel. Behnke v. CVS Caremark Corp.,* No. 14-CV-824, 2024 WL 1416499, at *41–43 (E.D. Pa. Apr. 2, 2024), *motion to certify appeal denied,* No. 14-CV-824, 2024 WL 3582633 (E.D. Pa. July 30, 2024).

[7] The District Court's failure to interpret the Rebate Statute and Rebate Agreement and allow Defendant to avoid aggregating rebates and price concessions to multiple parties for the same drug unit will have pernicious consequences and harm the Government. The District Court's Opinion opens the door for manufacturers to concoct a variety of different plans with different nomenclature what will prevent the Government from receiving prices better than those received by private entities. This defeats settled principles established by the Supreme Court that require defendants to "turn square corners" when "seek[ing] to spend the Government's money" – imposing on any such party "a duty to familiarize itself with the legal requirements for cost reimbursement." *Heckler v. Commun. Health Servcs.,* 467 U.S. 51, 63, 64 (quoting *Rock Island Ark. & La. R.R. v. United States*, 254 U.S. 141, 143 (1920)).

## **CONCLUSION**

For the foregoing reasons, Sheldon respectfully requests that this Court reverse the District Court's Opinion and Judgment.

Respectfully submitted,

*/s/ Joseph M. Callow, Jr.*
Joseph M. Callow, Jr.
Gregory M. Utter
Callow + Utter Law Group
8044 Montgomery Road, Suite 170
Cincinnati, OH 45236
Phone: (513) 930-0743
jcallow@callowandutter.com
gmutter@callowandutter.com

Joel D. Hesch
The Hesch Firm, LLC
3540 Ridgecroft Drive
Lynchburg, VA 24503
Phone: (434) 229-8677
joel@howtoreportfraud.com

*Counsel for Deborah Sheldon, as Executrix of the Estate of Troy Sheldon*

December 3, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the word-processing system used to prepare the brief, Microsoft Word, indicates that this brief contains 12,987 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Joseph M. Callow, Jr.*
Joseph M. Callow, Jr.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 3, 2024, I electronically filed the foregoing

Brief of Appellees with the Clerk of the Court for the United States Court of Appeals

for the Fourth Circuit by using the appellate CM/ECF system.

*/s/ Joseph M. Callow, Jr.*
Joseph M. Callow, Jr.
